## EDWARD ORR v. NELLIE S. KEYES.

*Trover for Goods detained after Attachment suit is Discontinued.*

When an attachment suit is discontinued, the right to detain the goods ceases.

A contract provided that certain attachment suits between the parties should be discontinued and the goods consigned to a person named, who should deliver them only on joint order signed by all the parties. The suits were discontinued, but the consignee declined to receive the goods, and the former attaching party got possession of them. *Held*, that as the goods were no longer under attachment, and could not be held under the contract, because the failure of the bailee to act left that inoperative, trover would lie for their conversion.

Error to Superior Court of Detroit. Submitted October 5. Decided October 18.

TROVER brought by defendant in error for the conversion of goods belonging to her, but seized by Orr under a claim of right based on the following special agreement:

"This memorandum made between Edward Orr, of Detroit, Michigan, and Nellie S. Keyes, of Girard, Michigan, witnesseth. Whereas, George A. Keyes is indebted to Edward Orr, in about the sum of fifty-two hundred dollars; and whereas, to enforce said indebtedness, said Orr has commenced three suits, two in Norwich, Conn., and one at Worcester, Mass.; and whereas it has been proposed to further secure said indebtedness, and to discontinue said suits without costs to either party. Now, therefore it is agreed as follows: Said Orr in consideration of two thousand dollars further security to be placed in his hands, as follows, viz.: the horse, pedlar's wagon, harness, and the stock of goods therein contained, belonging to said George A. Keyes, now in Norwich, Conn., and also sufficient of the goods now in Worcester, Mass., claimed as her goods by Mrs. Keyes, to make in value two thousand dollars, agrees with Mrs. Keyes to discontinue forthwith all said suits, and to direct all the goods attached in said suit to be shipped to Detroit, consigned to George H. Lothrop, and to give six months' time for the sale of said goods, as hereinafter mentioned, before any other steps shall be taken to collect or enforce said indebtedness. Said horse, wagon and harness is to be taken at a sum to be fixed by some disinterested referee at Detroit, and said goods which were mostly originally bought of said Orr to be taken at cost prices. Said Orr further agrees that he will from time to time, and in suitable quantities and assortments, place said goods in the hands of said George A. Keyes to be sold; that he will also furnish him said horse, wagon and harness to enable him to peddle said goods; said Keyes to render to him accounts of his sales, and to pay over to him the proceeds thereof, as often as practicable, and at least once every four weeks. The proceeds of said sales are to be applied on said indebtedness. And the said Nellie S. Keyes in consideration of said premise, agrees with the said Orr that such property shall be turned over to said Orr as soon as practicable after its arrival in Detroit, to be held by him as security as aforesaid, and to be sold with all practicable diligence and proceeds applied as above. Said George H. Lothrop, on the arrival of said goods in Detroit, is to deliver the same only by the joint direction of said Orr, George A. Keyes and Nellie S. Keyes; and he shall not otherwise be liable for the same in any respect. Mr. Orr claims that Mr. and Mrs. Keyes are jointly bound to him on said indebtedness, but Mrs. Keyes denies that she is personally bound at all, and this agreement is not to

affect said question in any way.   Said George A. Keyes is to furnish reasonable security to said Orr to account to him for the goods and pedlar's rig when put in his hands. Mrs. Keyes is to discontinue a suit in trover against said Orr now pending in the Superior Court at Detroit, without costs to either party.   Detroit, July 28th, 1876.   EDWARD ORR.   NELLIE S. KEYES."

Mr. Lothrop declined to receive the goods, or have anything to do with them until the whole freight was put into his hands in cash.   The freight bills having come to the possession of Orr, he paid the freight himself, took the goods and secreted them.   Mrs. Keyes thereupon brought trover for the conversion of the goods and recovered, and Orr brought error.

*Geo. E. Halliday* and *Ashley Pond* for plaintiff in error.

*Griffin & Dickinson* for defendant in error.

GRAVES, J.   Mrs. Keyes sued in trover and was permitted to recover, and it is now contended that no evidence was shown fairly tending to prove conversion.   No other question is urged.   The whole evidence is returned, and a majority of the court think the objection cannot be sustained.   Before the property was brought to this state, Mr. Orr had no claim except in so far as he held one under the attachment suit at the east.   According to the special agreement under which the goods were removed here, the attachment causes were to be discontinued, and Mr. Orr insists that they were discontinued, and no doubt he is correct.   The right to hold, therefore, under force of the attachment suits, ceased when the suits themselves came to an end, and if he had any right thereafter to meddle with the property, it must have been based on something else. He claims that the special agreement gave him the right. A majority of the court think differently.   They are of opinion that it was of the essence of that arrangement that Mr. Lothrop should receive the property and hold as bailee, and that it should be only drawn from him for the purpose of appropriation in the way provided for by the

contract; that Mrs. Keyes was willing to trust Mr. Lothrop·
with the goods and not Mr. Orr on their arrival here, and
that Mr. Lothrop's failure to act disappointed a fundamen-
tal part of the scheme and left the contract inoperative;.
that the goods had not ceased to belong to Mrs. Keyes, and
the contract having become abortive there was no right any-
where to hinder her assumption of possession; that Mr.
Orr in any event could set up no claim to more than $2,000·
worth and would certainly be liable for all beyond, and as·
a consequence of the exorbitance of his claim might possi-
bly be for the whole.

Judgment affirmed with costs.

COOLEY, C. J. and CAMPBELL, J., concurred.