## GEORGE W. AMES V. JEROME B. PARROTT.

FILED MAY 22, 1901. No. 9,489.

Commissioner's opinion.  Department No. 2.

1. **Where a Statute Requires a Witness to an Act, by Implication He Must Be Disinterested.** Where a statute, in order to secure evidence of some act, requires it to be done in the presence of or attested by a specified number of persons, it is implied that such persons shall be disinterested, and no person having a direct interest in such act is a competent witness thereto.

2. **Statutory Provisions for Levy of Attachment to be Strictly Pursued.** Special statutory provisions respecting the manner in which attachments shall be levied must be strictly pursued, and departure therefrom will render a levy invalid.

3. **Plaintiff in Attachment Not a Proper Witness of Levy Thereof.** The requirement of section 205 of the Code of Civil Procedure that a sheriff levying an attachment go to the place where property of the defendant may be found and declare that by virtue of the order he attaches such property at the suit of the plaintiff, in the presence of two residents of the county, is not complied with by a levy and declaration in the presence of two persons one of whom is the plaintiff in the attachment.

4. **Pleading:** REPLY. In case no reply to material allegations of new matter in an answer appears in the record, and other issues are disclosed upon which the cause was properly triable, it will not be presumed that it was tried upon the matters admitted by the pleadings. To bring the case within the exception that no advantage may be taken of want of reply where the trial proceeded upon the theory that a reply had been filed, there must be something in the record from which an inference may be drawn that reply was waived or from which this court may know what issues were in fact tried.

5. **Motion for New Trial:** TIME. The time within which a motion for a new trial is required to be filed is to be reckoned from the date of rendition of the decision of the trial court, and not from the date of entry thereof.

6. ——: WHEN NOT REQUIRED. No motion for a new trial is necessary where the error complained of is that the pleadings, taken together, do not support the judgment.

ERROR from the district court for Douglas county. Tried below before DICKINSON, J. *Reversed.*

*Hamilton & Maxwell,* for plaintiff in error.

*Cowin & Abbott* and *Lee Helsley, contra.*

Argued orally by *Henry E. Maxwell,* for plaintiff in error, by *Lysle I. Abbott, contra.*

POUND, C.

Parrott, hereinafter referred to as plaintiff, sued Ames, hereinafter styled defendant, setting up five causes of action for services rendered and money loaned. An order of attachment was issued at the instance of the plaintiff and levied upon the lands of the defendant. The latter moved to discharge the attachment on the ground that the levy was irregular and invalid, and is here upon error from the order of the court overruling such motion, and from the judgment of the court in favor of the plaintiff upon the main case.

The sheriff's return shows that upon receipt of the order of attachment he went to the lands to be levied upon and attached them "in the presence of J. B. Parrott and F. P. Salmon, two residents of Douglas county, state of Nebraska." It appeared in evidence upon the motion to discharge the attachment, and the court found, that "the J. B. Parrott named by the officer in his return to said order of attachment and Jerome B. Parrott, plaintiff herein, are one and the same person," and it does not appear and is not claimed that any person other than said Parrott and Salmon was present at the time of the levy. For these reasons the defendant contends that the requirements of the statute were not complied with and that the levy is invalid. The Code (section 205) provides that in levying an attachment the officer "shall go to the place where the defendant's property may be found, and there in the presence of two residents of the county, declare that by virtue of said order he attaches said property at the suit of such plaintiff; and the officer, with the said residents, who shall be first sworn or affirmed

by the officer, shall make a true inventory and appraise-
ment of all the property attached, which shall be signed
by the officer and residents, and returned with the order."
Is the plaintiff in attachment, being a resident of the
county, a proper person to witness the levy and declara-
tion thereof by the sheriff under this section? Require-
ments of this nature are very common in attachment
statutes, and are to be found in some of the earliest stat-
utes upon the subject. In the most recent statutes the
tendency is to substitute a requirement that a copy of
the writ and proceedings be filed with the recorder or
register of deeds. But in either case, the obvious purpose
is to make the levy public and notorious, to prevent at-
tachment liens from attaching secretly and by surrepti-
tious entries and indorsements, and to enable the other
party to inquire into the date of and circumstances at-
tending the levy; and the courts have so construed them.
*Bryant v. Duffy*, 128 Mo., 18, 30 S. W. Rep., 317; *Root v.
Railroad Co.*, 45 Ohio St., 222, 12 N. E. Rep., 812. If this
is the purpose of the requirement, we think that it fol-
lows that no person having a direct interest in the levy
is a competent witness thereof.

In the analogous cases of attesting witnesses to deeds
and mortgages it is well settled that they must be with-
out direct or certain legal interest in the act attested.
Interested parties have also been held disqualified from
attesting a chattel mortgage (*Seibold v. Rogers*, 110 Ala.,
438, 18 So. Rep., 312), or a signature to a note by mark,
required by statute to be attested. *Chadwell v. Chadwell*,
98 Ky., 643, 33 S. W. Rep., 1118. The object of requiring
attestation of deeds and other instruments is to enable
the other party to inquire into the circumstances attend-
ing the sealing and delivery (*Markley v. Swartzlander*, 8
Watts & Serg. [Pa.], 172); and although the incom-
petency of grantees or parties directly interested in con-
veyances to attest their execution has sometimes been
put upon the ground of common law incapacity to testify
to the facts in court, and sometimes upon construction

58

of particular statutes (*Child v. Baker*, 24 Nebr., 188), the prevailing and better view is that public policy is the true basis thereof. *Amick v. Woodworth*, 58 Ohio St., 86, 50 N. E. Rep., 437; *Donovan v. St. Anthony & Dakota Elevator Co.*, 8 N. Dak., 585, 80 N. W. Rep., 772. We are not unaware, in reaching this conclusion, that the common law disqualifications of witnesses by reason of interest have been done away with; nor have we overlooked that disqualification of interested attesting witnesses having been rested by some upon incompetency to testify in court, the removal of the latter disqualification has sometimes been thought to obviate the former. *Fisher v. Porter*, 11 S. Dak., 311, 77 N. W. Rep., 112. But we prefer to adhere to those authorities which recognize an inherent disqualification resting upon public policy and unaffected by the change in the rules of evidence. In *Amick v. Woodworth, supra,* the court says (p. 100): "The true reason of the disqualification we apprehend is, that to permit a grantee to attest as a witness the execution of an instrument made to himself, or take its acknowledgment as an officer, where its attestation and acknowledgment are necessary to give it validity, would be against public policy, and practically defeat the real purpose of the law, which is to prevent the perpetration of frauds on the grantors, and afford reasonable assurance to those who deal with or on the faith of such instruments that they are genuine and represent *bona fide* transactions." In *Donovan v. St. Anthony & Dakota Elevator Co., supra,* the court, quoting from the foregoing, adds: "But not only is the construction contended for by respondent repugnant to the intent and purpose of the statute, but it is, we think, entirely out of harmony with its language as commonly understood; for we think men generally understand it to mean the calling in of a person who is not a party to a transaction to hear and see its consummation, and subscribe his name as a witness to what the parties have in his presence consummated, and that parties to the contract are disqualified to act in

that capacity; and such is the weight of authority." In *Winsted Savings Bank v. Spencer*, 26 Conn., 194, it is held that a statute requiring conveyances of land to be attested by two witnesses implies that the witnesses are to be disinterested. Likewise in *Horbach v. Tyrrell*, 48 Nebr., 514, 521, this court said: "It would seem that on grounds of public policy an officer should be disqualified from taking acknowledgment whose direct and beneficial interest would be subserved in having the conveyance made which he acknowledged." Without citing other instances, it is evident that where the law, in order to secure evidence of some act, requires it to be done in the presence of, or attested by, a specified number of persons, an implication arises that these persons shall be such as are not directly interested in the act and beneficiaries thereof. This conclusion is rendered the more certain in respect to the statute here in question because it is provided that the same persons who witness the levy shall inventory and appraise the attached property, which could not be done, with any propriety, by an interested party. As Parrott, plaintiff in the attachment, was not a competent witness of the levy thereof, the case stands as if the sheriff had made his levy and declaration in the presence of one witness only, and we have further to consider the effect of such an irregularity thereon.

It is a well established rule that where there is a special statutory provision respecting the manner in which levy of an attachment shall be made, it must be strictly observed, and that departure therefrom will invalidate the levy. 1 Shinn, Attachment & Garnishment, sec. 207; Drake, Attachment, secs. 194, 236a; 3 Ency. Pl. & Pr., 54; *Fairbanks v. Bennett*, 52 Mich., 61, 63, 17 N. W. Rep., 696; *Cary v. Everett*, 107 Mich., 654, 65 N. W. Rep., 566; *Main v. Tappener*, 43 Cal., 206; *Norvell v. Porter*, 62 Mo., 309; *Gates v. Tusten*, 89 Mo., 13, 21; *Bottoms v. McFerran*, 43 S. W. Rep. [Ky.], 236. Not only have very small irregularities in other respects been held fatal to the levy,

but the courts have uniformly enforced strict observance of requirements designed to insure publicity and notoriety and to preserve evidence of the time and circumstances of the levy. Failure to levy or make declaration thereof before witnesses, under substantially the same requirement as in our statute, has been decided to be fatal repeatedly. *Tiffany v. Glover*, 3 Greene [Ia.], 387, 393; *Marnine v. Murphy*, 8 Ind., 272; *Earthman v. Jones*, 2 Yerg. [Tenn.], 484; *Cabeen v. Douglass*, 1 Mo., 336. Under more recent statutes prescribing some form of written or recorded notice in addition to or as a substitute for declaration before witnesses, strict and entire compliance with the statutory requirements has been exacted. *Stanton v. Boschert*, 104 Mo., 393, 16 S. W. Rep., 393; *Bryant v. Duffy*, 128 Mo., 18, 30 S. W. Rep., 317; *Sharp v. Baird*, 43 Cal., 577; *Smith v. Brown*, 96 Ga., 274, 23 S. E. Rep., 849; *Thompson v. White*, 25 Colo., 226, 54 Pac. Rep., 718; *Steinfeld v. Menager*, 53 Pac. Rep. [Ariz.], 495. In *Stanton v. Boschert* it appeared that a requirement that an abstract of the attachment be filed with the recorder had been substituted for an older requirement of declaration of levy before a witness. The court held that no lien could be acquired unless such abstract was filed as required by the statute. In *Bryant v. Duffy* the same question arose, and counsel suggested that the case just cited referred only to priorities between different attaching creditors. But the court said that the requirement in question, being a substitute for levy and declaration before witnesses, "was intended to constitute part of a complete and valid levy," and that "by a failure of the sheriff to file the required abstract no valid attachment of the property was made." In *Sharp v. Baird* the statute required the sheriff, in attaching land, to post a copy of the attachment in a conspicuous place on the premises. The sheriff, instead of posting a copy of the attachment, posted a notice thereof, and the attachment was held invalid. Nothing has been cited to the contrary. It is argued that *Tiffany v. Glover, supra*, is over-

ruled by *Rowan v. Lamb*, 4 Greene [Ia.], 468. But in *Rowan v. Lamb* the real question involved was whether deficiencies in a return could be supplied by parol and what presumption arose where the details of the levy were not returned. In *Tiffany v. Glover* the court had held that omission in the return to recite all the statutory steps was fatal. In *Rowan v. Lamb* the court overrules *Tiffany v. Glover* as to this, but does not suggest that the prior ruling as to the necessity of levy and declaration before witnesses was unsound. In *Gapen v. Stephenson*, 18 Kan., 140, the defect complained of was not in the levy but that one of the appraisers was not a householder. Appraisement is not required in order to secure notoriety and publicity in the levy, but for the benefit of the attachment debtor, and the court held that in the absence of prejudice such irregularity, not going to the right of the plaintiff to have an attachment, was not fatal. In this connection we may notice the suggestion made at the hearing that the defect here in question could not be taken advantage of by the attachment defendant, but only by other attaching creditors or claimants of the property who might be injured thereby. Examination of the authorities discloses no ground for such distinction, and in *Bryant v. Duffy, supra,* it was expressly repudiated. The true distinction is between requirements after levy intended solely for the benefit of the debtor, and those intended for the protection not only of the debtor but of the public generally, by insuring a public and notorious levy, the time and circumstances whereof do not depend for evidence merely upon such entry as an officer may make in secret, but are subject to proof by records or disinterested witnesses. *Root v. Railroad Co.*, 45 Ohio St., 222, 228, 12 N. E. Rep., 812. It appears that afterwards, when about to appraise the property levied upon, the sheriff called one John H. Butler to assist therein, and that the appraisement was made by Salmon and Butler, the plaintiff taking no part. The court found that the levy was made as above described and that "thereafter"

the sheriff called Salmon and Butler to make the appraisement, and that the defendant had failed to show prejudice by reason of the fact that Butler, who took part in the appraisement, was not one of the residents who witnessed the levy, as required by the statute. What would be the effect of calling a person to appraise who was not present at the levy, we need not decide, since the real point, overlooked in the findings of the lower court, is as to the effect of failure to make the levy and declaration thereof before two witnesses. The subsequent calling in of Butler did not obviate this defect, since no levy and no declaration in his presence is claimed. For the foregoing reasons we are of opinion that the motion to discharge the attachment should have been sustained.

Exception is also taken to the judgment in the main case for the reason that no reply was filed to the answer of the defendant wherein he set up an accord and satisfaction as to the first cause of action in the petition. The judgment is general, and it does not appear upon which of the causes of action it was rendered, but it is conceded that the amount thereof could only be sustained by a finding for the plaintiff upon each. That material allegations of new matter in an answer will stand admitted unless replied to is firmly established by recent and repeated decisions of this court. But it is argued that the answer in the case at bar contains no material allegations of new matter requiring reply, and also that the cause was tried below on the theory that the affirmative allegations of the answer were denied, and hence that reply was waived, or at least the failure to reply may not be urged at this time. In the first cause of action plaintiff alleged that he commenced work for defendant in November, 1890, as a salesman and collector, and continued in his employment for the period of fifty-two and two-thirds months. He further alleged that at the time he entered such service the parties orally agreed upon a compensation of $75 a month for the period of one year; that at the expiration of the year they agreed orally to continue said contract

indefinitely, and that for the services rendered the defendant agreed to pay $4,850. There were four other causes of action. The answer was à general denial as·to the four last causes of action. As to the first, it admitted that "the plaintiff commenced work for the defendant in November, 1890, as a salesman" and denied "each and every other allegation and part of allegation in the said first cause of action contained." Further answering it alleged that in November, 1892, the defendant paid the plaintiff the sum of $3,500, and that such sum was in full payment and was accepted by the plaintiff in full payment of $1,000 theretofore loaned and "for all services rendered by said plaintiff in any sum whatever." We take it no issue is raised as to the length of service by admitting that some work was done and denying the other allegations. This would be consistent with fifty-two months' service instead of the fifty-two and two-thirds alleged, and in this respect is comparable to the answer in *Gray v. Elbling*, 35 Nebr., 278. But the petition alleges also a contract to pay a stipulated compensation for one year and a subsequent extension of said contract to the whole term of service. If there was such a contract admitted, so that a fixed and liquidated sum was due thereunder, the plea of payment and acceptance of a less sum would not state a defense. But the answer denied these and all other allegations of the petition, except the rendition of the services; and even though it must be construed as admitting the whole service alleged, it put in issue the alleged agreement to pay $75 a month therefor and the alleged extension. *Ruth v. Ruth*, 12 Nebr., 594; *Smiley v. Anderson*, 28 Nebr., 100. In other words, the answer admits the service, denies the contract to pay a fixed compensation, so that the liability would be in an unliquidated sum,—whatever the services were reasonably worth,—and alleges satisfaction thereof by payment of $3,500 accepted in full payment by the plaintiff. This plea of accord and satisfaction required a reply.

With respect to the claim that the cause was tried

below on the theory that a reply had been filed, we find nothing in the record to sustain such conclusion, and the recital in the judgment that the cause was heard "upon the petition of the plaintiff, the answer of the defendant and the testimony" obviously raises an inference to the contrary. There were five causes of action, as to four of which the answer was a general denial. The mere fact that testimony was taken and a trial had, of itself, would not indicate more than that the cause was tried upon the matters properly triable, namely, the four last causes of action. There is no bill of exceptions from which this court may know what was in fact tried, and while we might have suspected that the issue tendered in the answer was tried, by reason of the amount of the judgment, the fact that the record recites a trial on petition and answer only, indicating either that no reply was deemed necessary, or that the cause was tried on the four last causes of action, precludes such an inference. In *Stewart v. American Exchange Nat. Bank*, 54 Nebr., 461, it was held substantially that to bring a case within the rule that no advantage may be taken in this court of failure to reply below where trial was had on the theory that a reply had been filed, there must be something in the record from which an inference may be drawn that reply was waived or from which this court may ascertain what issues were actually tried. We fail to see any distinction between this case and that, and must hold that the answer as to the first cause of action stood admitted and that the pleadings and the finding for the plaintiff "on the issues" do not support the judgment rendered. *Grant v. Bartholomew*, 57 Nebr., 673; *Harlan County v. Hogsett*, 60 Nebr., 362.

It is contended, however, that the motion for a new trial was not filed at the proper time, and hence that errors in the judgment are not reviewable. The cause was tried to the court without a jury. The findings of the court are dated April 3, 1897, but the judgment, including the findings, appears on the journal of April 10,

1897. The motion for a new trial was filed on April 6, and counsel argue that it is of no effect because it appears to have been filed four days prior to entry of the judgment. The record shows that it was on file at the time the judgment was entered, and that after entry of the judgment it was called up and ruled on. This might well be thought sufficient. But we do not feel bound to decide as to the effect of premature filing of such a motion. As the findings of the court are dated April 3, and the order overruling the motion for a new trial was rendered April 10, it is pretty clear that the clerk withheld the entry of the findings and judgment until the motion for a new trial had been passed on. The record ought to be so construed as to give effect to all the recitals therein, and in no other way can the two dates which appear in connection with this judgment be reconciled. In such case the motion was seasonable, since the Code (sec. 316) requires it to be filed within three days after the verdict or decision was "rendered." There is a clear and well established distinction between rendition and entry of a judgment. 1 Black, Judgments, sec. 106. The findings of the court were its "verdict or decision" within the meaning of the Code, and the motion should have been and was made within three days from the rendition thereof. The date of the entry upon the journal would be presumed to be the date of rendition, but where the record shows these dates to be different, the latter alone is to be considered. *Nebraska Nat. Bank v. Pennock,* 59 Nebr., 61. Moreover, it is very doubtful whether a motion for a new trial was required to raise the point in question. In *Farris v. State,* 46 Nebr., 857, 858, this court held that without a motion for a new trial all the pleadings might be examined for the purpose of ascertaining whether the judgment rendered could be rendered properly on such pleadings. See, also, *Shickle v. Kent,* 34 Nebr., 568, 572; *Hansen v. Kinney,* 46 Nebr., 207; *Holmes v. Lincoln Salt Lake Co.,* 58 Nebr., 74. It is true in *Becker v. Simonds,* 33 Nebr., 680, the court ruled

that error in overruling a motion for judgment on the pleadings could not be reviewed unless raised in the motion for a new trial. But it will be noticed that the petition in error did not assign as error that the judgment was contrary to law or not sustained by the pleadings; and error in the ruling on the motion, which alone was assigned, had been waived by going to trial. In *Fox v. Graves*, 46 Nebr., 812, it was held that an objection that the verdict and judgment exceeded the amount prayed in the petition must be raised by motion for a new trial. But this was on the ground that an entire omission to pray for judgment would not have rendered the petition demurrable. A case more in point is *Everett v. Hobleman*, 15 Nebr., 376. There plaintiff in error claimed that he should have had a verdict upon a counter-claim of $20, there being no reply thereto. The court pointed out that for aught that appeared in the record the jury may have allowed it and reduced the recovery to that extent. This seems to have been the controlling consideration, although the court remarked upon the failure to raise the objection in the motion for a new trial. We think all of these cases may be reconciled with *Farris v. State, supra*, and that the error in question is reviewable without regard to the time of filing of the motion for a new trial.

For the foregoing reasons it is recommended that the order overruling the motion to discharge the attachment and also the judgment in the main case be reversed, and that the cause be remanded with directions to discharge the attachment and grant a new trial of the main case.

SEDGWICK and OLDHAM, CC., concur.

By the Court: For the reasons given in the foregoing opinion the ruling on the motion to discharge the attachment and also the judgment in the main case are reversed and the cause is remanded with direction to the district court to discharge the attachment and grant a new trial of the main case.

REVERSED AND REMANDED.